# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>ROSS KRAMER and<br>SUSAN KRAMER,<br><br>　　　　　Debtors | Chapter 13<br>Case No. 12-17674-FJB |

## MEMORANDUM OF DECISION ON
## TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

The chapter 13 trustee has objected to confirmation of the debtors' Chapter 13 Plan. The basis of the objection is that the debtors have deducted from their income scheduled payments on their second mortgage that they have no intention of paying under the plan, that without this deduction the debtors' projected disposable income exceeds the amount of the plan payment, and that consequently the plan fails to direct all available projected disposable income to payment of creditors. This presents the question of whether the Court should adopt a mechanical or a forward-looking approach to a chapter 13 debtor's projected disposable income deduction for contractually scheduled payments on a secured debt where the debtor's chapter 13 plan provides that no such payments will actually be made. For the reasons set forth below, the Court will adopt the forward-looking approach, disallow the debtors' deduction for payments on their second mortgage from calculation of their projected disposable income, and sustain the Trustee's objection.

I.    FACTS AND PROCEDURAL HISTORY

On September 20, 2012, Ross Kramer and Susan Kramer ("the Debtors") filed a bankruptcy petition and plan under chapter 13 of the Bankruptcy Code, thereby commencing the present case. The Debtors own real property at 33 Littlemore Road, Framingham, Massachusetts, which is valued at $230,500.00.  This property is encumbered by a first-position mortgage to Everhome Mortgage Co. and

a second, junior mortgage to Bank of America. The value of the property is less than the outstanding balance of $233,554.00 on the Everhome mortgage loan.

The Debtors' chapter 13 plan proposes a monthly payment of $1,200.00 for a term of 60 months. With these funds, the trustee would pay two priority claims totaling $15,000.00, an administrative claim for Debtors' counsel's fee of $2,431.00, the chapter 13 trustee's fee, and a 24.59% dividend to general unsecured creditors. The Debtors would continue making payments on the unmodified, secured claims of Everhome Mortgage Co., Fifth Third Bank (a secured car loan), and Eastern Bank (a secured car loan). The Debtors would strip off the junior, Bank of America mortgage lien, cease regular payments on the loan it secures, and treat Bank of America entirely as a general unsecured creditor.

With their bankruptcy petition, the Debtors filed a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C) which stated their monthly disposable income as $653.29. The Debtors included in the calculation of their disposable income a deduction of $813.00 per month, representing scheduled payments on the Bank of America mortgage loan. On November 21, 2012, Carolyn Bankowski, the chapter 13 trustee ("the Trustee"), filed an Objection to Confirmation of Debtor's Chapter 13 Plan, arguing that the Debtors are not entitled to deduct scheduled payments on their second mortgage from their monthly disposable income if they do not actually intend to make such payments under their chapter 13 plan. The Trustee further argued that by claiming this impermissible deduction, the Debtors had understated their projected disposable income, and consequently the Plan did not satisfy the best efforts test of 11 U.S.C. §1325(b)(1)(B). After a hearing, the parties briefed the issue, and the Trustee's objection is now ripe for disposition.

II. **POSITIONS OF THE PARTIES**

The Debtors claim that they may deduct payments on the Bank of America mortgage loan in the calculation of their projected disposable income under 11 U.S.C. § 707(b)(2)(A)(iii)(I), which provides for

2

the deduction of payments scheduled as contractually due to secured creditors. While the Debtors intend to cease those payments under their chapter 13 plan, they cite to *Morse v. Rudler (In re Rudler)*, 576 F.3d 37 (1st Cir. 2009), where the First Circuit Court of Appeals held that the plain language of 11 U.S.C. § 707(b)(2)(A)(iii)(I) entitled a chapter 7 debtor to deduct mortgage payments on his home from his monthly income, despite his intent to surrender that home to the mortgagee. *Id.* at 52. The Debtors cite further to *In re Marshall*, 407 B.R. 1 (Bankr. D. Mass. 2009), where the court applied the same reasoning developed in *Rudler* to facts similar to those of the instant case, holding that a chapter 13 debtor could deduct from his projected disposable income payments on a mortgage he intended to strip off. *Id.* at 8. The Debtors would have this Court follow *Marshall* and overrule the objection of the Trustee.

The Trustee argues that the Debtors' deduction is impermissible in light of the United States Supreme Court's rulings in *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010), and *Ransom v. FIA Card Services*, 131 S. Ct. 716 (2011). In *Lanning*, the Court held that changes in a chapter 13 debtor's income or expenses known at the time of confirmation should be taken into account when determining that debtor's projected disposable income. *Lanning* at 2478. In *Ransom*, the Court held that a chapter 13 debtor could not claim the statutory standard expense for car ownership expenses where the debtor had no such expenses in reality. *Ransom* at 721. Taken together, the Trustee claims that these cases indicate that the Debtors are not entitled to claim a deduction from their projected disposable income for payments scheduled as contractually due to secured creditors where the Debtors do not intend to actually make those payments under their chapter 13 plan.

### III.     DISCUSSION

A court may not approve a chapter 13 plan over the Trustee's objection unless the plan provides that all of the "debtor's projected disposable income to be received" during the term of the plan "will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (2012).

3

Disposable income is defined by the Bankruptcy Code as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2) (2012). For debtors who, like the Kramers, earn an income greater than the state median income for a household of their size, "reasonably necessary" expenses are those allowable under 11 U.S.C. § 707(b)(2)(A)-(B), the chapter 7 means test. 11 U.S.C. § 1325(b)(3) (2012). Such expenses include a deduction for payments scheduled as contractually due to secured creditors. 11 U.S.C. § 707(b)(2)(A)(iii)(I) (2012). Whether the Trustee's objection should be sustained turns on whether Debtors may deduct from their income their monthly mortgage payments to Bank of America under § 707(b)(2)(A)(iii)(I) as incorporated by § 1325(b), notwithstanding the Debtors' intent to treat Bank of America as an unsecured creditor under their plan. Given the interrelation of § 1325 and § 707, the question of whether the Debtors should be permitted to claim this deduction implicates two distinct inquiries. The first is whether the claimed deduction is allowable under the § 707 means test. The second is whether the claimed deduction, even if so allowable, should be excluded from the Debtors' projected disposable income calculation under § 1325. This Court holds that although the Debtors' deduction survives § 707 analysis, it must nevertheless be excluded under the forward-looking calculation of § 1325.

With respect to whether 11 U.S.C. § 707(b)(2)(A)(iii)(I) permits the deduction, the First Circuit Court of Appeals' holding in *Rudler* controls. In that case, the First Circuit sided with the vast majority of bankruptcy courts and held that the "plain language of section 707(b)(2) permits a Chapter 7 debtor to deduct payments on a secured debt even when the debtor plans to surrender the collateral underlying that debt." *Id.* at 45. While *Rudler* dealt with a planned surrender of collateral rather than the lien-stripping at issue in the instant case, "a determination that [a] claim is unsecured has the same practical effect as a surrender of property to a mortgagee. In both instances, debtors are no longer required to make monthly payments to secured creditors. Accordingly, the decisions involving surrender of secured property are apposite[.]" *In re Marshall*, 407 B.R. at 4. While the Debtors do not intend to make

4

payments on their Bank of America mortgage loan under the plan, those payments remain scheduled as contractually due as of the bankruptcy filing. The statute unambiguously indicates "that the debtor may deduct all payments owed at the time of the bankruptcy filing," *Rudler*, 576 F.3d at 48. The Debtors may therefore claim a deduction for scheduled payments on their Bank of America mortgage loan under 11 U.S.C. § 707(b)(2)(A)(iii)(I).

The Trustee argues that the Supreme Court's decisions in *Lanning* and *Ransom* require a forward-looking analysis of the Debtors' second mortgage payments under § 707, implicitly suggesting that the First Circuit's holding in *Rudler* was abrogated by subsequent United States Supreme Court jurisprudence. However, this Court concludes that neither *Lanning* nor *Ransom* compels a forward-looking approach to deductions for scheduled payments on secured debts under the § 707 means test. In *Ransom*, the Supreme Court held that a statutory standard expense for car ownership claimed by a debtor was not an "applicable" expense in the sense required by § 707(b)(2)(A)(ii)(I), because the debtor did not have a car payment—the expense did not correspond to the "individual debtor's financial circumstances." *Id.* at 724. The Trustee argues that the expense at issue in the case at bar likewise fails to correspond to the reality of the Debtors' financial situation. However, both *Rudler* and the instant case pertain to deductions for contractually scheduled payments on secured debt under § 707(b)(2)(A)(iii)(I), not deductions claimed under § 707(b)(2)(A)(ii)(I) such as were at issue in *Ransom*. Unlike § 707(b)(2)(A)(ii)(I), § 707(b)(2)(A)(iii)(I) does not contain the term "applicable," the statutory basis of *Ransom*'s holding. The *Ransom* Court states:

> If Congress had not wanted to separate in this way debtors who qualify for an allowance from those who do not, it could have omitted the term "applicable" altogether. Without that word, all debtors would be eligible to claim a deduction for each category listed in the Standards. Congress presumably included "applicable" to achieve a different result.

*Id.* at 724. This suggests that the omission of the term "applicable" from § 707(b)(2)(A)(iii)(I) indicates this provision does not subject the deduction for contractually scheduled payments to secured creditors

5

to a forward-looking inquiry into the individual debtor's financial circumstances. *See In re Sonntag*, 2011 WL 3902999, *3 (Bankr. N.D.W. Va. 2011) (holding *Ransom* has no effect on deductions for secured debt payments); *see also In re Ng*, 2011 WL 576067, *2 (Bankr. D. Haw. 2011) ("The phrase 'scheduled as contractually due' in § 707(b) does not suggest that the court should consider future events."); *In re Grinkmeyer*, 456 B.R. 385, 388 (Bankr. S.D. Ind. 2011). *But see In re Sterrenberg*, 471 B.R. 131, 136 (Bankr. E.D.N.C. 2012) ("To allow the Debtor to take these secured payment deductions would be absurd and diametrically in opposition to the policy goals of the means test which Justice Kagan noted in *Ransom* are to help ensure that debtors who *can* pay creditors *do* pay them." (internal quotation marks removed, emphasis in original).

Likewise, *Lanning* also does not require a forward-looking approach to payments on secured debts under the § 707 means test. *Lanning*'s reasoning turned on the use of the word "projected" in the text of 11 U.S.C. § 1325(b)(1)(B), holding that the presence of the word in the statute demanded a forward-looking approach to assessing a chapter 13 debtor's income. *Lanning* at 2471. The absence of that statutory language from § 707 suggests a distinction between the § 707 chapter 7 means test and the § 1325 analysis at issue in *Lanning*. The majority of courts to consider this issue have found that a mechanical approach is appropriate with respect to § 707(b)(2)(A)(iii)(I), and that because of its reliance on statutory language specific to the chapter 13 context, *Lanning*'s forward-looking approach should be applied only in chapter 13 calculations of projected disposable income. *Walton v. Hardigan*, 2012 Bankr. LEXIS 5873, 7 (Bankr. S.D. Ga. 2012) ("[*Lanning* and *Ransom*] only recognized that once a debtor is in chapter 13, the test for confirmation is a forward-looking one. Notably, both *Lanning* and *Ransom* involved the interpretation of *projected* disposable income. No phrase similar to 'projected disposable income' is present in § 707(b)(2)." (emphasis in original)); *In re Grinkmeyer*, 456 B.R. 385, 388 (Bankr. S.D. Ind. 2011) ("Though never defined, 'projected disposable income' certainly means something different than 'disposable income' and only in the context of a chapter 13 proceeding is the concept of

PDI relevant."); *In re Sonntag*, 2011 WL 3902999, *3 (Bankr. N.D.W. Va. 2011) ("Grafting the forward looking approach now required in Chapter 13 cases onto the means test analysis in Chapter 7 cases is not required, nor justified."); *In re Vecera*, 430 B.R. 840, 843 (Bankr. S.D. Ind. 2010) ("[A]pplication of the means test within a chapter 13 case is not interchangeable with its operation within a chapter 7 case. . . 'disposable income' in a chapter 13 case is determined by employing § 707(b)(2)'s means test. But, it is a debtor's 'projected disposable income' that must be devoted to the plan[.]"); *In re Rivers*, 466 B.R. 558 (Bankr. M.D. Fla. 2012) (holding § 707(b) to be purely mechanical, *Lanning* and *Ransom* notwithstanding); *but see In re Thompson*, 457 B.R. 872, 880 (Bankr. M.D. Fla. 2011) (holding that allowing chapter 7 debtors to claim expenses they will not actually pay frustrates legislative intent); *In re Fredman*, 471 B.R. 540, 551 (arguing "it would be absurd" to ignore evidence of certain changes in Debtors' expenses).

However, the natural implication of this reading of *Lanning* is that while § 707(b) permits the deduction claimed by the Debtors, *Lanning* requires the exclusion of the deduction at the level of the § 1325(b)(1) projected disposable income calculation. In chapter 13, courts must apply a forward-looking analysis. "[W]hen a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 130 S. Ct. at 2478. If the Debtors' plan is confirmed, the cessation of payments on the secured Bank of America loan will be certain at the time of confirmation, because it will be effected by the confirmation itself. This Court must take into account the fact that the proposed lien-stripping would substantially decrease the monthly expenses of the Debtors. Those savings should be made available to general unsecured creditors rather than accrue to the benefit of the Debtors. "[T]he deduction of mortgage expense from the Chapter 13 debtor's disposable income is not intended to enrich the debtor at the expense of his unsecured creditors." *In re Turner*, 574 F.3d 349, 356 (7th Cir. 2009). The Debtors' claimed deduction for those contractually scheduled payments that they will avoid

7

under the proposed plan should therefore be excluded from the Debtors' projected disposable income under § 1325.

The Debtors cite to *In re Marshall*, 407 B.R. 1 (Bankr. D. Mass. 2009), rightly noting that the *Marshall* court considered the same question presented by the instant case and found that a mechanical rather than forward-looking approach should be applied to expenses for payments on a secured debt in the chapter 13 context. *Id.* at 7. However, *Marshall* pre-dated *Lanning*, and this Court is persuaded that *Lanning* provided guidance compelling a forward-looking approach. *See In re Quigley*, 673 F.3d 269, 274 (4th Cir. 2012) ("[F]ailing to account for such changes and thereby denying the unsecured creditors payments that the Debtor clearly could make would be just the sort of senseless result that the *Lanning* Court rejected") (quoting *Lanning*, quotation marks removed); *In re Darrohn*, 615 F.3d 470, 477 (6th Cir. 2010) ("*Lanning* also governs the bankruptcy court's determination on the deduction for mortgage payments. Because it is undisputed that the Darrohns intended to surrender these properties, this represents a change in the Darrohns' expenses that [was] known or virtually certain at the time of confirmation."(quoting *Lanning*, quotation marks removed); *In re Blumer*, 453 B.R. 429, 432 (Bankr. D. Kan. 2011) ("Chapter 13 debtors may not deduct budget expenses they know they will not pay after confirmation. . . . Accordingly, Debtors may not deduct the payments on account of the secured debt for the surrendered home on Form B22C."); *In re Liehr*, 439 B.R. 179, 187 (B.A.P. 10th Cir. 2010) ("[A] fixed debt is disappearing, and the change in circumstances should inure to the benefit of the unsecured creditors.").[1]

---

[1] The Debtors argue that these cases were overruled by *Ransom v. FIA Card Services*, 131 S. Ct. 716 (2011). However, as the Debtors themselves observe, *Ransom* dealt specifically with the statutory language of the § 707 means test calculation. This speaks to a different issue than the § 1325 projected disposable income calculation treated by these cases and by *Lanning*. *See Ransom*, 131 S. Ct. at 721.

IV.    CONCLUSION

For the foregoing reasons, this Court holds that the Debtors are not entitled to deduct scheduled payments on their Bank of America mortgage loan in the calculation of their projected disposable income. Absent this deduction, the Debtors have a projected monthly disposable income of $1,466.29, which exceeds their proposed monthly plan payment of $1,200.00 by $266.29. Because the proposed plan does not direct all of the Debtors' projected disposable income towards payment of creditors, the plan fails the best efforts test of 11 U.S.C. § 1325(b)(1)(B). A separate order shall enter sustaining the Trustee's objection to confirmation.

Date:  July 12, 2013                                                          _____
                                                                                           Frank J. Bailey
                                                                                           United States Bankruptcy Judge